**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

MARK QUENTIN HENSLEY,

      Plaintiff,

v.                                        CIVIL ACTION NO. 3:19-cv-00845

ANDREW SAUL,
Commissioner of Social Security,

      Defendant.

**PROPOSED FINDINGS & RECOMMENDATION**

Plaintiff Mark Quentin Hensley ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f. (ECF No. 2.) By standing order entered on January 4, 2016, and filed in this case on November 27, 2019, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 4.) Presently pending before this Court are Claimant's Memorandum in Support of Plaintiff's Motion for Judgment of the Pleadings (ECF No. 10) and the Commissioner's Brief in Support of Defendant's Decision (ECF No. 11).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY**

Claimant's request to reverse the Commissioner's decision (ECF No. 10), **GRANT** the Commissioner's request to affirm his decision (ECF No. 11), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I.    BACKGROUND

### A. Information about Claimant and Procedural History of Claim

Claimant was 47 years old at the time of his alleged disability onset date and 49 years old on the date of the decision by the Administrative Law Judge ("ALJ"). (*See* Tr. at 366.)[1]  He completed the ninth grade.  (*Id.* at 371.)  Most recently, he worked as a carpenter for a home builder, and he has also been employed as a mason for a builder and as a trash collector.  (*Id.*)  Claimant alleges that he became disabled on August 11, 2016, due to rheumatoid arthritis, heart failure, coronary artery disease, high blood pressure or hypertension, fatty liver, irritable bowel syndrome, pre-diabetes, obesity, kidney problems, chronic pain, arthritis, asthma, gastroesophageal reflux disease, and high cholesterol.  (*Id.* at 370–71.)

Claimant filed his applications for benefits on September 6, 2016.  (*Id.* at 332–39.) His claims were initially denied on December 29, 2016, and again upon reconsideration on June 1, 2017.  (*Id.* at 225–34, 242–55.)  Thereafter, on June 29, 2017, Claimant filed a written request for hearing.  (*Id.* at 256–57.)  An administrative hearing was held before an ALJ on October 4, 2018, in Huntington, West Virginia.  (*Id.* at 36–67.)  On October 26, 2018, the ALJ rendered an unfavorable decision.  (*Id.* at 17–35.)  Claimant then sought review of the ALJ's decision by the Appeals Council on December 19, 2018.  (*Id.* at 331.) The Appeals Council denied Claimant's request for review on October 4, 2019, and the ALJ's decision became the final decision of the Commissioner on that date.  (*Id.* at 1–7.)

---

[1] All references to "Tr." refer to the Transcript of Proceedings filed in this action at ECF No. 9.

Claimant timely brought the present action on November 27, 2019, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).  (ECF No. 2.)  The Commissioner filed an Answer (ECF No. 8) and a transcript of the administrative proceedings (ECF No. 9).  Claimant subsequently filed his Memorandum in Support of Plaintiff's Motion for Judgment of the Pleadings (ECF No. 10), and in response, the Commissioner filed his Brief in Support of Defendant's Decision (ECF No. 11).  As such, this matter is fully briefed and ready for resolution.

B.  *Relevant Medical Evidence*

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes it here for the convenience of the United States District Judge.

1.  *Medical Treatment During Relevant Period*

On August 16, 2016, Claimant presented to the emergency room with "left flank pain."  (Tr. at 466.)  A CT scan of his abdomen and pelvis revealed an abdominal aortic aneurysm.  (*Id.* at 475–76.)  Claimant was also "noted to be in acute kidney failure," but his "kidney injury resolved" "[a]fter rehydration."  (*Id.* at 466.)  Claimant was admitted to the hospital and underwent "an endovascular repair."  (*Id.*)  He was directed to return in one week for a follow-up and to use his medication for at least a month.  (*Id.*)  About a week later, on August 25, 2016, Claimant presented to his cardiologist for monitoring and complained of "[n]ot feeling fine and tiring easily," shortness of breath, and fainting, but no chest pain or discomfort or heart palpitations.  (*Id.* at 463.)  A physical examination was normal.  (*Id.* at 464.)  Claimant's cardiologist noted that his coronary artery disease was "[s]table" and his hypertension was controlled.  (*Id.* at 465.)  Claimant was directed to continue his current therapy and return in six months.  (*Id.*)

3

At his follow-up appointment for his abdominal aortic aneurysm on September 1, 2016, Claimant stated that he was "doing well since [his] discharge from [the] hospital" and did not have any complaints. (*Id.* at 539.) A physical examination was normal, and the surgical incisions were observed to be "healing well." (*Id.* at 540.) Claimant was directed to continue care with his primary care physician and his cardiologist. (*Id.* at 541.) Claimant presented to his primary care physician the same day and complained of weakness while walking, lightheadedness "when he quickly stands," sweating, and shortness of breath, but no chest pain, abdominal pain, or back pain. (*Id.* at 545.) A physical examination was unremarkable. (*Id.* at 547.) Claimant's physician modified his medications, ordered blood work for his weakness and lightheadedness, and directed him to increase his fluid intake and lose weight. (*Id.* at 548.)

Claimant returned to his primary care physician on October 13, 2016, and reported that "[h]e is doing great" with "[n]o new complaints at this time." (*Id.* at 598.) He stated that his lightheadedness had "improved much" with the medication changes, but he reported worsening left foot pain. (*Id.*) A physical examination was normal. (*Id.* at 600.) Claimant's physician ordered an ultrasound of his left foot and lab work for his fatty liver. (*Id.* at 600–01.) He noted that Claimant was losing weight and monitoring his diet and that he had "no issues" with his heart and his blood pressure was controlled. (*Id.* at 601.)

On January 5, 2017, Claimant presented to his primary care physician for a routine follow-up appointment. (*Id.* at 161.) He complained of "shortness of breath and chest tightness" with "no cough." (*Id.*) A physical examination was normal. (*Id.* at 163.) However, Claimant underwent two electrocardiograms, both of which were abnormal. (*Id.* at 164.) He was given aspirin and a nitroglycerin pill for his chest pain, and the pain "resolve[d]." (*Id.* at 161.) Claimant's primary care physician recommended that he go to

4

the emergency room by ambulance because he was a heart-attack risk, but Claimant declined and wanted to wait for his girlfriend to pick him up to take him to the hospital. (*Id.* at 163.)  A physical examination in the emergency room was normal.  (*Id.* at 627.) Imaging of Claimant's chest revealed "[n]o acute abnormality," and an electrocardiogram was unremarkable.  (*Id.* at 630–31.)  Claimant was discharged the same day in "improved" condition.  (*Id.* at 631.)

Claimant presented to his cardiologist on February 6, 2017, and again reported "[n]ot feeling fine and tiring easily," chest pain or discomfort, and shortness of breath, but no fainting.  (*Id.* at 610.)  A physical examination was normal.  (*Id.* at 611–12.)  The cardiologist ordered a heart catheterization and changed Claimant's medication because it "may be causing [shortness of breath]."  (*Id.* at 612.)  The heart catheterization was "non obstructive with preserved [ejection fraction]."  (*Id.* at 663.)

On April 10, 2017, Claimant underwent a pulmonary function test, which revealed "severe airway obstruction and a diffusion defect."  (*Id.* at 656–57.)  He presented to his primary care physician on April 13, 2017, "for a routine check-up."  (*Id.* at 663.)  A physical examination was normal.  (*Id.* at 665–66.)  His physician suggested a sleep study because Claimant complained of "[s]noring with daytime sleepiness."  (*Id.* at 667.)

Claimant presented to the emergency room on May 24, 2017, complaining of pain in his side that began when "he coughed and felt a pop in his left lower ribs."  (*Id.* at 688.) A physical examination was normal except for tenderness in Claimant's "left lower lateral rib."  (*Id.* at 690.)  Imaging of Claimant's chest and ribs was unremarkable.  (*Id.* at 694.) He was diagnosed with chest wall pain and discharged the next day in stable condition. (*Id.* at 691.)  He then presented to his cardiologist that same day, May 25, 2017.  (*Id.* at 677.)  A physical examination was normal.  (*Id.* at 679.)  The cardiologist ordered imaging

to monitor Claimant's abdominal aortic aneurysm and directed Claimant to follow up in six weeks. (*Id.*) The imaging was unremarkable. (*Id.* at 675–76.)

Claimant returned to his cardiologist for a routine appointment on July 10, 2017, and complained of shortness of breath upon exertion. (*Id.* at 116.) A physical examination was normal. (*Id.* at 118.) However, Claimant's cardiologist ordered an echocardiogram and referred him to a pulmonologist for further testing. (*Id.* at 119–20.) The echocardiogram, which was conducted on August 1, 2017, was normal. (*Id.* at 114–15.)

On October 10, 2017, Claimant presented to the pulmonologist, reporting shortness of breath that was exacerbated by walking and relieved by rest. (*Id.* at 158.) A physical examination was largely normal, except the pulmonologist observed diminished breath sounds. (*Id.* at 158–59.) A chest x-ray revealed "[n]o acute findings." (*Id.* at 154–55.) The pulmonologist observed that Claimant's "symptoms are suggestive of [chronic obstructive pulmonary disease ("COPD")]." (*Id.* at 159.) He changed Claimant's inhaler and scheduled him for a sleep study. (*Id.* at 159.) The sleep study was conducted on November 5, 2017, and Claimant was diagnosed with obstructive sleep apnea. (*Id.* at 152–53.) Claimant returned to his pulmonologist on February 8, 2018, relating that he continued to experience symptoms and could not afford to use his prescribed inhaler every day. (*Id.* at 146.) Claimant again had diminished breath sounds on physical examination. (*Id.* at 149.) He was prescribed different inhalers and scheduled for a CPAP titration study. (*Id.* at 150.) The study was conducted on February 28, 2018, and Claimant was fitted for a CPAP machine. (*Id.* at 144–45.)

Claimant again returned to his pulmonologist for a follow-up appointment on May 24, 2018, and reported that his obstructive sleep apnea symptoms improved with use of a CPAP machine and that he "feels better breathing wise" with the use of his inhalers for

his COPD.  (*Id*. at 134, 138.)  However, he also complained of shortness of breath on

exertion.  (*Id*. at 134.)  Aside from noted diminished breath sounds, a physical

examination was normal.  (*Id*. at 137–38.) Claimant was directed to return in six months.

(*Id*. at 138.)

Claimant presented to his primary care physician for medication refills on

September 9, 2018.  (*Id*. at 700.)  A physical examination was normal.  (*Id*. at 702.)  He

was directed to continue his current care for all his conditions.  (*Id*. at 702–03.)

2. *Consultative Medical Examination: Dr. Stephen Nutter, M.D.*

On December 6, 2016, Claimant underwent a consultative physical examination

with Dr. Stephen Nutter, M.D. ("Dr. Nutter").  (*Id*. at 576–85.)  Claimant reported that

"he had a heart attack 5 years ago" and had multiple stent placements.  (*Id*. at 576.)  He

stated that his hypertension was controlled with medication.  (*Id*.)  He reported occasional

chest pain "brought on by eating certain foods" and stress that was relieved with "a

stomach aid."  (*Id*.)  Claimant also reported shortness of breath "since he had the heart

attack" that was exacerbated by "dusty environments and smoke" and "hot and humid

weather but not perfume, cleaning chemicals, or outdoor allergens." (*Id*. at 576.)  He told

Dr. Nutter that he did not use an inhaler. (*Id*.)  He also stated that he could "walk 25 yards

on flat ground before becoming short of breath and having to stop and rest." (*Id*.)  In

addition, Claimant reported "joint pain in the wrists, elbows, shoulders and knees but not

the hands, hips, ankles or feet." (*Id*. at 577.)  He stated that "walking, standing, kneeling,

squatting and going up and down stairs increases" his knee pain, and "reaching, lifting,

pushing, pulling and using the arms overhead" increases his shoulder and elbow pain.

(*Id*.)

Dr. Nutter observed that Claimant "ambulates with a limping gait that is not unsteady, lurching, or unpredictable" but did not require a handheld assistive device. (*Id.* at 578.) He also observed that Claimant "appears stable at station and comfortable in the supine and sitting positions." (*Id.*) He noted that Claimant was not "short of breath with exertion or when lying flat during the exam." (*Id.*) Pulmonary testing revealed that Claimant's breathing was moderately restricted "with improvement after bronchodilator." (*Id.* at 584.) When examining Claimant's upper extremities, Dr. Nutter observed pain in Claimant's elbows with range of motion and strength testing and tenderness in the left elbow and left hand but normal grip strength in both hands. (*Id.* at 578–79.) He also observed knee pain with range of motion testing when examining Claimant's lower extremities. (*Id.* at 579.) Dr. Nutter noted that Claimant had full muscle strength in his upper and lower extremities. (*Id.*) He observed that Claimant "was able to walk on his toes but cannot walk on his heels due to left heel pain" and could "perform tandem gait and was able to squat, though he did have knee pain with squatting." (*Id.*) Dr. Nutter diagnosed Claimant with chest pain and history of coronary artery disease, asthma, and osteoarthritis. (*Id.*)

### C. *Sequential Evaluation Process*

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds

through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step.

At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments.  *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements will result in a finding of "not disabled."  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the

listed impairments.'"  *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step.  *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e).  The claimant's RFC reflects "her ability to perform work despite her limitations."  *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work."  *Lewis*, 858 F.3d at 862.  "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  *Monroe*, 826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using a "special technique" to "evaluate the severity of [the] mental impairment[]."  20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659.  Considering the claimant's "pertinent symptoms, signs, and laboratory findings," the ALJ determines whether the

claimant has "a medically determinable mental impairment(s)" and "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id*. §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert [("VE")] responding to a hypothetical that incorporates the claimant's limitations." *Id*. (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id*.

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant satisfied the insured status requirements and was insured through the date of the decision. (Tr. at 22.) He further determined that Claimant had not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) He found that Claimant's morbid obesity; osteoarthritis; degenerative disc disease of the thoracic spine; chronic obstructive pulmonary disease; asthma; coronary artery disease, status-post multiple stents; and status-post aortic aneurysm repair constituted "severe" impairments. (*Id.*) However, he found that those impairments, or a combination thereof, failed to meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 24–25.) Upon assessing Claimant's RFC, the ALJ determined that Claimant is able "to perform light work," except he "can occasionally climb and crawl" and "can frequently balance, stoop, kneel, and crouch." (*Id.* at 25.) In addition, the ALJ found that Claimant "must avoid concentrated exposure to extreme cold; extreme heat; vibrations; irritants such as fumes, dust, odors, gases, and poorly ventilated areas; and hazards such as moving machinery and unprotected heights." (*Id.*)

The ALJ concluded that given the limitations imposed by the Claimant's RFC, he was unable to perform his past relevant work. (*Id.* at 28.) He noted that Claimant is "a younger individual" with "a limited education" and that "[t]ransferability of job skills [was] not material to the determination of disability." (*Id.* at 29.) Because the ALJ determined that Claimant was unable to perform the full range of light work, he enlisted a VE to aid in his finding that Claimant is capable of working as a nut and bolt assembler, small parts assembler, or routing clerk at the light level of exertion, or as a laminator, final assembler, or sorter at the sedentary level. (*Id.*) As a result, the ALJ concluded that

Claimant was not "under a disability . . . from August 11, 2016, through the date of this decision." (*Id*. at 30.)

## II.   *LEGAL STANDARD*

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id*. (alteration omitted).  "[T]he threshold for such evidentiary sufficiency is not high." *Id*. "In reviewing for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).  Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id*. (quoting *Craig*, 76 F.3d at 589).

## III.   *ANALYSIS*

Claimant argues that the ALJ incorrectly stated that Claimant received "minimal treatment" for his COPD and was not prescribed medication or inhalers to treat it.  (ECF No. 10 at 11.)  He further asserts that the ALJ did not consider the combined effect of his impairments, improperly evaluated his subjective complaints of pain, and did not account

for his obesity. (*Id.* at 11–14.)[2] Claimant asks this Court to reverse the Commissioner's decision and award him benefits or to reverse the Commissioner's decision and remand this matter to the ALJ. (*Id.* at 16.) The Commissioner responds that the ALJ's misstatement of fact did not affect his evaluation of Claimant's COPD and that he clearly considered Claimant's impairments in combination. (ECF No. 11 at 8–10.) He also argues that the ALJ's evaluation of Claimant's subjective complaints is supported by substantial evidence and reflected in the RFC assessment and that the ALJ accounted for Claimant's obesity. (*Id.* at 10–13.)

### A. Misstatement of Fact as to COPD

Claimant first argues that the ALJ misrepresented the record when he stated that Claimant was not prescribed medication or an inhaler for his COPD and his treatment was otherwise minimal. (ECF No. 10 at 11.) The Commissioner appears to agree that the ALJ made a misstatement of fact but argues that Claimant has not demonstrated that he was prejudiced by the error. (ECF No. 11 at 8–9.) Indeed, Claimant fails to explain how the ALJ's incorrect statement influenced his ultimate finding that Claimant was not disabled. (ECF No. 10 at 11.) He does not assert, for instance, that the symptoms associated with his COPD caused additional functional limitations that the ALJ did not account for in his RFC assessment. *See Wood v. Colvin*, No. 0:13-cv-2124 DCN, 2014 WL 5339731, at *4 (D.S.C. Oct. 20, 2014) (report and recommendation of magistrate judge) (concluding that remand warranted because ALJ found claimant's neuropathy not severe based on misstatement that she testified it did not cause her any limitations).

---

[2] Claimant also argues that the ALJ failed "to produce evidence sufficient to rebut the presumption of disability." (ECF No. 10 at 14–15.) However, no such presumption exists. *Collins v. Saul*, No. 3:19-cv-00824, 2020 WL 4516855, at *13 (S.D.W. Va. July 17, 2020), *adopted by* 2020 WL 4508312 (S.D.W. Va. Aug. 5, 2020); *see Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985) ("The ultimate burden to prove disability lies on the claimant."). Thus, Claimant's argument is without merit.

"As a general proposition, [this Court] appl[ies] the harmless error doctrine in reviewing a decision of the Commissioner denying a benefits claim." *Keller v. Berryhill*, 754 F. App'x 193, 199 (4th Cir. 2018) (per curiam) (citing *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017)); *see Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 253 (4th Cir. 2016) ("The harmless error rule applies to agency action because if the agency's mistake did not affect the outcome, it would be senseless to vacate and remand for reconsideration."). "In order to merit remand or reversal, an ALJ's error must cause harm and not just a possibility of prejudice." *Keaton v. Colvin*, No. 3:15-cv-00588, 2017 WL 875477, at *4 (E.D. Va. Mar. 3, 2017) (footnote and internal citations omitted). Claimant "carries the burden of showing that prejudice resulted." *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). He has not even attempted to meet it in this case. (ECF No. 10 at 11.)

Moreover, as the Commissioner points out (ECF No. 11 at 9), the ALJ determined at step two of the sequential evaluation process that Claimant's COPD was a severe impairment because it "significantly limit[s] his ability to perform basic work activities." (Tr. at 23.) The ALJ cited to Claimant's December 6, 2016 consultative examination—at which, notably, Claimant told consultative examiner Dr. Nutter that he did not use an inhaler (*id.* at 576)—treatment records from his primary care physician reflecting complaints of shortness of breath (*id.* at 588, 598, 604), and an April 10, 2017 pulmonary function test that showed "severe airway obstruction and a diffusion defect" (*id.* at 657). The ALJ also incorporated restrictions on Claimant's exposure to extreme heat and pulmonary irritants in his RFC assessment, effectively adopting the state-agency medical consultant's RFC assessment, which accounted for limitations caused by Claimant's pulmonary conditions. (Tr. at 25, 28, 187, 196.) In other words, despite the ALJ's

misstatement that Claimant "received minimal treatment for" his COPD and was not "prescribed any medication or inhalers" (*id.* at 28), his decision indicates that he considered how the impairment affected Claimant's ability to work.  As such, the undersigned **FINDS** that Claimant was not prejudiced by the error; thus, remand is not warranted.

### B. *Impairments in Combination*

Claimant contends that the ALJ did not adequately consider the combined effect of his impairments on his ability to work.  (ECF No. 10 at 11–12, 13–14.)  As part of the RFC assessment, the ALJ must evaluate the claimant's "ability to perform work despite her limitations" in light of "'all' relevant record evidence."  *Patterson*, 846 F.3d at 659 (citing 20 C.F.R. § 404.1520(e)).  In doing so, "the ALJ [is] required to consider the combined, synergistic effect of all of Claimant's medically determinable impairments, severe and non-severe, to accurately evaluate the extent of their resulting limitations on Claimant."  *Blankenship v. Astrue*, No. 3:11-cv-00005, 2012 WL 259952, at *12 (S.D.W. Va. Jan. 27, 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989)).  "The ailments should not be fractionalized and considered in isolation; instead, their cumulative effect should be analyzed to determine the totality of their impact on the claimant's ability to engage in basic work activities."  *Id.* (citing *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983)).

Here, in conducting his RFC assessment, the ALJ summarized the medical evidence of record relating to Claimant's severe impairments.  (Tr. at 26–28.)[3]  In particular, he noted that Claimant's elbow arthritis "has been managed with conservative

---

[3] At the second step of the sequential evaluation process, the ALJ summarized the medical evidence of record relating to the impairments he found to be not severe and explained why those impairments did not result in functional limitations.  (Tr. at 23–24.)

treatment consisting of injections, pain medication, and pain gel," he "received minimal treatment" for his degenerative disc disease of the thoracic spine and the record did not reflect "any abnormal findings of the spine," and his heart conditions were "managed . . . with medication and regular monitoring" and more recent cardiac examinations "have been normal." (*Id*. at 26–27.) The ALJ also reviewed the findings from Claimant's December 6, 2016 consultative examination, which reflected elbow pain but normal muscle and grip strength, no tenderness or muscle spasm in Claimant's spine and a normal straight-leg raising test, pain and tenderness in Claimant's knees with a limping gait and difficulty squatting and walking on heels but normal muscle strength, and "moderate[ly] restrict[ed]" pulmonary function "with improvement after bronchodilator." (*Id*. at 27–28.) He also explained that he gave "great weight" to the opinions of the state-agency medical consultant about Claimant's functional abilities because they were "consistent with the evidence." (*Id*. at 28.)

In sum, the ALJ's written decision indicates that he considered the combined effect of Claimant's impairments on his ability to work. Notably, aside from a general statement that his severe "impairments significantly limit [his] ability to perform basic work activities" and that it is "unreasonable" to find otherwise, Claimant does not elaborate on the actual limitations caused by his conditions. (ECF No. 10 at 12.) "[A] diagnosis is insufficient to prove disability—rather, there must be resultant functional limitations precluding a claimant's ability to work." *Smith v. Berryhill*, No. 3:16-cv-11868, 2018 WL 3800039, at *9 (S.D.W. Va. July 17, 2018) (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)), *adopted by* 2018 WL 3795277 (S.D.W. Va. Aug. 9, 2018). Claimant bears the burden to demonstrate that the RFC assessment does not accurately reflect the restrictions he requires. *See Okes v. Berryhill*, No. 1:16-cv-08976, 2017 WL 4003028, at

*5 (S.D.W. Va. Aug. 11, 2017), *adopted by* 2017 WL 3996419 (S.D.W. Va. Sept. 11, 2017). He has not met it here.  As such, the undersigned **FINDS** that the ALJ's RFC assessment accounts for the combined effect of Claimant's impairments.

### C.   Subjective Complaints of Pain

Next, Claimant asserts that the ALJ improperly evaluated his subjective complaints of pain.  (ECF No. 10 at 12–13.)[4]  As part of the RFC assessment, the ALJ must evaluate a claimant's "statements and symptoms regarding the limitations caused by her impairments."  *Linares v. Colvin*, No. 5:14-cv-00120, 2015 WL 4389533, at *5 (W.D.N.C. July 17, 2015) (citing 20 C.F.R. §§ 404.1529, 416.929; *Craig v. Chater*, 76 F.3d 585, 593–96 (4th Cir. 1996)).  To evaluate the disabling effect of an individual's symptoms, the ALJ first determines whether "objective medical evidence" supports the existence of "a condition reasonably likely to cause the [symptoms] claimed."  *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  If so, the ALJ then "evaluate[s] the intensity and persistence of [the claimant's] symptoms" to "determine how [those] symptoms limit [the claimant's] capacity for work."  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  An individual's subjective complaints about her symptoms are relevant to the latter determination.  *See id.* §§ 404.1529(c)(3), 416.929(c)(3).  Put simply, the claimant's symptoms "must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the [symptoms], in the amount and degree, alleged by the claimant."  *Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005) (per curiam) (quoting

---

[4] To the extent Claimant argues that the ALJ wholly failed "to perform any credibility determination," that argument is without merit.  (ECF No. 10 at 12.)  The ALJ's RFC assessment outlines the applicable law, summarizes Claimant's testimony and the pertinent medical evidence of record, and renders a conclusion about the consistency of Claimant's allegations and the record.  (Tr. at 26–28.)  Therefore, Claimant's assertion that the ALJ did not at all endeavor to evaluate his subjective complaints is plainly incorrect.

*Craig*, 76 F.3d at 591).  The ALJ is obligated to "assess whether the claimant's subjective symptom statements are consistent with the record as a whole."  *Vass v. Berryhill*, No. 7:17-cv-87, 2018 WL 4737236, at *6 n.4 (W.D. Va. June 12, 2018), *adopted by* 2018 WL 4704058 (W.D. Va. Sept. 30, 2018).

The ALJ in this case began his RFC assessment by summarizing Claimant's hearing testimony, noting in particular his complaints of "constant elbow pain" with no relief from "over-the-counter pain medications and pain relief creams."  (Tr. at 26.)  In his review of the medical evidence of record, the ALJ observed that Claimant "has a history of joint pain" in his elbows and knees.  (*Id.* at 26–27.)  But the ALJ ultimately found that although Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id.* at 28.)  Specifically, the ALJ noted that Claimant "declined" surgery to treat his elbow arthritis and that it "has been managed with conservative treatment consisting of injections, pain medication, and pain gel."  (*Id.* at 26.)  He further noted that although Claimant was "diagnosed with osteoarthritis of the knees . . . his physician's examinations have not shown any abnormalities of the knees" and the record lacked "x-rays of the knees."  (*Id.* at 27.)  In addition, the ALJ summarized consultative examiner Dr. Nutter's findings, noting his observations that Claimant had pain in both elbows, tenderness in both knees, and knee pain upon squatting but had normal grip strength and normal muscle strength in his upper and lower extremities.  (*Id.* at 27–28.)

Put simply, the ALJ explained his reasons for concluding that Claimant's joint pain was not as limiting as he alleged and cited to medical evidence of record to support that

conclusion.  (*Id*. at 26–28.)  "If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination."  *Brown v. Astrue*, No. 8:11-cv-03151-RBH-JDA, 2013 WL 625599, at *17 (D.S.C. Jan. 31, 2013), *adopted by* 2013 WL 625581 (D.S.C. Feb. 20, 2013).  The undersigned **FINDS** that the ALJ properly conducted his analysis of Claimant's subjective complaints of pain in this case.

### D. Obesity

Claimant argues that the ALJ failed to account for his obesity in accordance with SSR 02-1p.  (ECF No. 10 at 13–14.)  "SSR 02-1p mandates that the ALJ consider both the individual and cumulative effects of obesity at steps two through five of the [sequential evaluation process]."  *Allen v. Colvin*, No. ADC-16-cv-2557, 2017 WL 2399591, at *6 (D. Md. June 1, 2017); *see* SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).  In this case, the ALJ found Claimant's obesity severe at step two "because it significantly limits his ability to perform basic work activities."  (Tr. at 23.)  He noted that he considered Claimant's obesity at the third step when determining that Claimant's impairments did not rise to Listing-level severity.  (*Id*. at 25.)  And in conducting the RFC assessment he used at steps four and five, the ALJ observed that Claimant "is morbidly obese."  (*Id*. at 26.)  He also accorded "great weight" to the opinions of the state-agency medical consultant (*id*. at 28), whose RFC assessment explicitly accounted for Claimant's obesity (*id*. at 187, 196). Clearly, the ALJ's written decision reflects that he considered Claimant's obesity at the relevant steps of the sequential evaluation process in accordance with SSR 02-1p.  As such, the undersigned **FINDS** no error.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 10), **GRANT** the Commissioner's request to affirm his decision (ECF No. 11), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.  Copies of any objections shall be served on opposing parties and provided to Judge Chambers.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals.  28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER: August 18, 2020

Dwane L. Tinsley
United States Magistrate Judge